**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-50060 |
| Plaintiff - Appellee, | D.C. No. 2:11-cr-00769-AG-1 |
| v. | |
| RALEIGH ELLIOTT BEARD, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted December 10, 2014
Pasadena, California

Before: GRABER, GOULD, and CALLAHAN, Circuit Judges.

Defendant Raleigh Beard was convicted of possession of child pornography

in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). He appeals from the district

court's denial of his motion to suppress a hard disk drive retrieved from his home,

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

which contained images of child pornography.  Beard also appeals from the district court's denial of his motion to suppress his incriminating statements about his possession of the hard drive and downloading child pornography.

We review a denial of a motion to suppress brought on Fourth Amendment grounds de novo.  *United States v. Tosti*, 733 F.3d 816, 821 (9th Cir. 2013) (citing *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006)).  We review factual findings for clear error.  *Id.* (citing *United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002)).  Where testimony is taken, the district court's credibility determinations are given "'special deference.'"  *United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir. 2013) (quoting *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008)).  We review the issue of whether a person has actual or apparent authority to consent to search de novo.  *Id.* (citing *United States v. Kim*, 105 F.3d 1579, 1581–82 (9th Cir. 1997)).

The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects.  U.S. Const. amend. IV (providing the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"); *Payton v. New York*, 445 U.S. 573, 587–88 (1980).  However, it is well established that a third party may consent to a search if that third party "possessed common authority

2

over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). Common authority is "joint access or control for most purposes." *Id.* at 171 n.7. Additionally, even if the third party does not have joint access or control for most purposes, "'[a] defendant may assume the risk that the third party will at times exceed the scope of authorized access, as that is defined in precise and narrow terms.'" *Kim*, 105 F.3d at 1582 (quoting *United States v. Sledge*, 650 F.2d 1075, 1080 n.10 (9th Cir. 1981)); *see also United States v. Gulma*, 563 F.2d 386, 389 (9th Cir. 1977) (defendant who gave co-conspirator key to motel room containing heroin assumed the risk that co-conspirator would consent to search the room); *United States v. Murphy*, 506 F.2d 529, 530 (9th Cir. 1974) (per curiam) (holding that individual who was not a lessee but was given limited access to a warehouse on occasion had "sufficient dominion over the premises to enable him to grant the necessary consent"). Because we determine that William, Beard's brother, had apparent authority to consent to the agents' entry, we need not decide whether he had actual authority.

"'Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent.'"

*Arreguin*, 735 F.3d at 1175 (quoting *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993)). "'Apparent authority is measured by an objective standard of reasonableness, and requires an examination of the actual consent as well as the surrounding circumstances.'" *Id.* (quoting *United States v. Ruiz*, 428 F.3d 877, 881 (9th Cir. 2005)). In assessing whether an officer's belief was objectively reasonable, the court considers "the facts available to the officer at the moment." *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (internal quotation marks omitted).

We hold that the district court properly determined William had apparent authority to authorize the search into Beard's home to retrieve the suspected contraband. Agent McKinnon and Investigator Troy responded to a call from Beatrice, Beard's ex-wife, about suspected child pornography. Upon their arrival, the door was open and William was walking back and forth from the house to the dumpster, in the process of throwing items away. The agents knocked on the door; they were greeted and William introduced himself. William told the agents that he was Beard's brother and that Beard had asked William to clean out the residence and dispose of his property. William also told the agents that Beard had granted him power of attorney and William had authorization to dispose of all of Beard's personal property. The agents observed that the house did not show any signs of forcible entry.

William's close relationship to the owner, his broad access to the area, his statement that he had the power of attorney over all of Beard's personal property, his knowledge of Beatrice's call to police officers and his expectancy of their arrival, as well as the lack of signs of forcible entry, support the agents' reasonable belief that William had authority to consent to their entry to retrieve the suspected contraband. *See Arreguin*, 735 F.3d at 1177 n.9 (apparent authority exists where "numerous indicia of authority support[] the officers' acceptance of consent to search").

We further hold that, even assuming there was neither actual nor apparent authority, the hard drive would have been inevitably discovered by lawful means. *See Nix v. Williams*, 467 U.S. 431, 447–48 (1984). Even if the agents had not entered the house, William would have turned over the videos, DVDs and CDs to them. Beatrice called the agents to pick up the items with William's knowledge, and neither William nor Beatrice wanted anything to do with what they believed to be child pornography. Agent McKinnon also testified that before she arrived at the house she suspected computer hardware might be involved. The conversation between Agent McKinnon and William would have taken place regardless of whether the agents entered the house and would have led to William's disclosure of the hard drive.

Thus, because William had apparent authority, or because the agents would have inevitably discovered the hard drive, Beard's later incriminating statements to agents admitting to possession of the hard drive and downloading child pornography are not fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484–88 (1963); *Nix*, 467 U.S. at 442–47.

**AFFIRMED.**

<u>United States v. Beard</u>, No. 13-50060

GRABER, Circuit Judge, concurring in part and dissenting in part:

I concur on the ground that the hard drive would have been discovered inevitably had the agents remained on the porch. <u>See</u> <u>Nix v. Williams</u>, 467 U.S. 431, 444 (1984) (holding that the exclusionary rule does not apply, despite a Fourth Amendment violation, when the government can establish by a preponderance of the evidence that the same information would have been discovered lawfully). The same conversation between the officers and the brother could and would have taken place on the front porch, and on this record the brother clearly wanted to cooperate and to turn over the DVDs and other items that led to the discovery of the computer and hard drive containing child pornography.

But I respectfully dissent from the holding that Defendant's brother had apparent authority to consent to a search of Defendant's home. The officers knew that the brother did not live in the house and that he was there temporarily and only to clean out Defendant's <u>personal</u> property. The brother had no key to the premises. The officers knew that the brother had common authority over items of <u>personal</u> property within the home but had no reason to think that he had authority over the home itself. <u>See, e.g.</u>, <u>United States v. Davis</u>, 332 F.3d 1163, 1170 (9th Cir. 2003) (holding that even a person who lives in the same dwelling does not have unlimited authority to consent to a search of the premises); <u>United States v.</u>

<u>Warner</u>, 843 F.2d 401, 403 (9th Cir. 1988) (holding that a landlord lacked authority to consent to a search even though the tenant had given him authority to enter the premises in the tenant's absence).