BERZON, Circuit Judge,
dissenting:
The majority seems to imagine “probable cause” as a cloud that follows certain people around, created by their idiosyncratic habits and irresponsible friends, and persisting even though the individuals are not suspected of any particular crime. This “probable cause” cloud, the majority imagines, is available for invocation by law enforcement to justify virtually any search. But, as the case law makes clear, probable cause does not exist in the air. And probable cause to think that someone is odd or that his friend is a negligent father does not justify seizing and searching his computers.
Instead, to justify a Fourth Amendment search, there must be probable cause to think that “contraband or evidence of a crime will be found in a particular place.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In a case, such as this one, where the items to be seized — images on a computer — could be, and usually are, innocuous in nature, an affidavit in support of a search warrant must establish a “fair probability” that the images actually are contraband or evidence of a crime. Id. Here, “the more precise question we must answer is whether the officer’s affidavit established probable cause that the images on the defendant’s computer were — as described— lascivious.” United States v. Hill, 459 F.3d 966, 970-71 (9th Cir.2006).
Because the majority loses sight of these fundamental precepts, I respectfully dissent.
I.
Although the majority stresses that we are to give “great deference” to a magistrate’s probable cause finding, Maj. op. at 1177 (quoting Hill, 459 F.3d at 970), deference has never meant abdicating our role to ensure that the Fourth Amendment is respected. As explained in Gates, this deference is meant to account for “the Fourth Amendment’s strong preference for searches conducted pursuant to a warrant,” lest police conclude that warrants are simply not worth the trouble and “resort to warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search.” 462 U.S. at 236, 103 S.Ct. 2317. Accordingly, Gates instructs us to interpret affidavits in a “commonsense,” rather than “hypertechnical” manner, id., resolving “doubtful or marginal cases” in favor of upholding the warrant’s validity, id. at 237 n. 10, 103 S.Ct. 2317 (citation omitted); see also Ewing v. City of Stockton, 588 F.3d 1218, 1223 (9th Cir.2009).
Nonetheless, Gates was clear that we “must continue to conscientiously review the sufficiency of affidavits on which warrants are issued” to ensure that the magistrate’s issuance of the warrant was not “a mere ratification of the bare conclusions of others.” 462 U.S. at 239, 103 S.Ct. 2317. In practice, applying the requisite deference means that we look to see whether there was a “substantial basis” for probable cause to search, United States v. Leon, 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), reviewing the magistrate’s ultimate finding as to probable cause for clear error. Hill, 459 F.3d at 970.
*1181 This is not a “doubtful or marginal case[ ].” Gates, 462 U.S. at 237 n. 10, 103 S.Ct. 2317. The affidavit supporting the search warrant for Krupa’s computers was indubitably inadequate to provide probable cause.[1] As the district court noted, there was but a single fact arguably supporting probable cause: the discovery of a photograph that “appeared to be of a nude 15 to 17 year old female with a web site label of www.nude-teens.com.” And that fact was insufficient to provide probable cause to believe that Krupa’s computers contained child pornography.
II.
Before turning to that single fact, I discuss other facts that the majority maintains alone support probable cause: that Sgt. Velasco was out of the country and had left his two children in the care of Krupa, who was a civilian; that police had responded to a “report of child neglect”; and the presence of 15 computers. Maj. op. at 1179. I agree with the district court that none of these factors have any pertinence at all to whether the warrant was issued with probable cause to believe that Krupa possessed child pornography, much less add up to probable cause without more.[2]
We must consider, of course, “the totality of the circumstances” in assessing probable cause. United States v. Hay, 231 F.3d 630, 635 (9th Cir.2000) (citation omitted). But a particular fact is only relevant to this inquiry insofar as its existence makes it more likely that the suspect is engaged in the criminal activity suspected. See, e.g., Millender v. County of Los Angeles, 620 F.3d 1016, 1030 (9th Cir.2010) (en banc), cert. granted, — U.S. -, 131 S.Ct. 3057, 180 L.Ed.2d 884 (2011); Gonzalez-Rivera v. INS, 22 F.3d 1441, 1446-47 (9th Cir.1994). Neither the government nor the majority explains how the fact that Krupa was a civilian living on a military base makes it more likely that there was child pornography on his computers, and I certainly see no connection.[3] This fact is just useless trivia.
The majority’s related invocation of Morgan v. United States, 323 F.3d 776, 778 (9th Cir.2003) to suggest that “civilians such as Krupa impliedly consent to searches when they enter a military base,” Maj. op. at 1179, fails badly. There is a very good reason why this argument was, as the majority notes, “not addressed by the parties,” id. at 1179: it is undisputed that Krupa did not consent. In fact, Krupa expressly revoked his consent to Reynolds searching his computers. See id. at 1176 (“Krupa revoked his consent to the search of the computers.”). Thus, to make any sense at all, the majority’s suggestion that Krupa impliedly consented to the search of his computers (even after he had revoked his express consent) must encompass the notion that this implied consent *1182 was irrevocable. The majority provides nothing to support this radical suggestion.[4]
That there were 15 computers in the home fares no better in supporting probable cause than the civilian-on-a-military-base fact. Neither the majority nor the government has explained how this fact makes it one whit more likely that Krupa had child pornography. There is not even the bare assertion that, for example, having that many computers, which Krupa apparently refurbished and resold, fits a “profile” of a collector of child pornography, such as the one discussed in United States v. Gourde, 440 F.3d 1065, 1072 (9th Cir.2006) (en banc). Instead, the government asserts that the computer collection is inherently “suspicious[ ],” but does not endeavor to explain why, or how this “suspicion” is at all related to the likelihood that the computers had child pornography (or any other contraband) on their hard drives. As we recently had occasion to note, “even inexpensive electronic storage media today can store the equivalent of millions of pages of information.” United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1175 (9th Cir.2010) (en banc). So the ability or likelihood of collecting even large amounts of child pornography does not increase simply because someone has multiple computers instead of one; a person so inclined can download reams of child pornography on a single computer with an internet connection.[5] See id.
Further, the government suggests that the “defendant’s first providing consent to review his many computers and then revoking this consent” supported probable cause, and the affidavit supporting the warrant application also recited this fact as supporting probable cause. But that fact cannot be considered for present purposes either. “[Rjefusal to consent to a warrant-less search is privileged conduct which cannot be considered as evidence of criminal wrongdoing.” United States v. Prescott, 581 F.2d 1343, 1351 (9th Cir.1978); see also Gasho v. United States, 39 F.3d 1420, 1438-39 (9th Cir.1994) (same).
Finally, the majority also places weight on the affidavit’s hearsay mention of a “report of child neglect,” Maj. op. at 1178, but there are three problems with doing so. First, the affidavit gives zero indication as to whether the allegation was ever substantiated. Second, the affidavit’s “report of child neglect” language is, at best, misleading hyperbole; in fact, the children’s mother, according to the police report, asked the police to go by the home to check on her children when they did not arrive at the train station as previously arranged. The government’s brief is more *1183 honest, calling the visit a “child welfare check.” Insofar as the misleading “child neglect” label supported probable cause, it must be disregarded. See United States v. Flyer, 633 F.3d 911, 916 (9th Cir.2011); Crowe, 608 F.3d at 435; United States v. Craighead, 539 F.3d 1073, 1080 (9th Cir.2008). Third, and most importantly, a generalized report that someone is neglecting children in his care, even if substantiated, does not provide probable cause to think that child pornography would be found on his computers.
The majority nonetheless goes so far as to hold that these irrelevant facts, taken together — “the presence of fifteen computers under the control of a civilian with no apparent ties to the military in a home on a military base in which children resided and for which the military police had received a report of child neglect” — is “unquestionably suspicious” enough to constitute, without more, “a fair probability that contraband or evidence of a crime would be found on the computers.” Maj. op. at 1179 (quotation marks omitted). In other words, the majority maintains that even “accepting that the picture” described in the affidavit “was not child pornography,” there was probable cause for the search. Id. at 1178.
Not so. Zero plus zero plus zero equals zero, not probable cause.
For one thing, a search warrant affidavit must establish a “nexus ... between the item to be seized and[the allegedly] criminal behavior.” Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In other words, “probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction,” and not just whether, if law enforcement were allowed to poke around enough, they might find evidence of something illegal. Id. (emphasis added); see also United States v. Rubio, 727 F.2d 786, 793 (9th Cir.1983). Second, the compendium of facts relied upon could not provide probable cause of any crime. Civilians stay with friends on military bases; people watch their friends’ children; and today, people have computers, even many computers, in their homes. These facts, even taken together and mixed with dollops of deference, simply do not support seizing and searching someone’s computers.
III.
That leaves the question whether, the majority’s extravagant holding concerning the existence of probable cause even without the photograph aside, the photograph could supply the missing probable cause. The photo was not included with the affidavit in support of the search warrant, and was described only as “appearing] to be of a nude 15 to 17 year old female.”
United States v. Battershell, 457 F.3d 1048 (9th Cir.2006), dictates that this bare description cannot possibly provide probable cause. As Battershell relates:
Federal law defines five categories of “sexually explicit conduct” with respect to child pornography. The first four categories deal with specific conduct that is easy to identify and describe: “(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; [and] (iv) sadistic or masochistic abuse.... ” The fifth category ... is the “lascivious exhibition of the genitals or pubic area of any person.”
Id. at 1051 (quoting 18 U.S.C. § 2256(2)(A)).[6] The affidavit in this case makes no mention of any particular con *1184 duct, so the photograph found on Krupa’s computer can only have fallen into the fifth category, if any.
The affidavit stated only that the female appeared to be 15 to 17 and was nude. It said nothing about what parts of her body were depicted, much less that they were exhibited lasciviously — that is, “so presented by the photographer as to .arouse or satisfy the sexual cravings of a voyeur.” Hill, 459 F.3d at 972 (quoting United States v. Wiegand, 812 F.2d 1239, 1244 (9th Cir.1987)). And of course, “not all images of nude children are pornographic.” Id. at 970; see also id. (“For example, ‘a family snapshot of a nude child bathing presumably would not’ be criminal.” (citation omitted)). Indeed, “the law recognizes that some images of nudity may merit First Amendment protection because they serve artistic or other purposes, and possessing those images cannot be criminal.” Id. The affidavit supporting the search warrant said absolutely nothing from which one could conclude that this image was child pornography, rather than art. For all we know from this description, the photograph was taken by a latter-day Renoir, intent on portraying from the back a young woman bathing.
The upshot is that here, as in Batter-shell, the affidavit’s
terse description, absent an accompanying photograph, is insufficient to establish probable cause that the photograph lasciviously exhibited the genitals or pubic area because [its] conclusory statement is an inherently subjective analysis and it is unclear if the photograph exhibited the young female’s genitals or pubic area.
Battershell, 457 F.3d at 1051.
In one respect, the affidavit here is even more deficient than that in Battershell, which involved a young female estimated at 8 to 10 years of age. Id. The subject of the photograph here, by contrast, appeared to be 15 to 17 years old. Had that estimate been low by just a year, this photograph would not have been illegal child pornography, but rather, perfectly legal adult pornography, injecting an additional factor of uncertainty absent in Battershell.
That the photograph had “a web site label” of www.nude-teens.com adds nothing to the probable cause analysis, at least absent some effort — apparently not undertaken here, despite ample opportunity to do so — to ascertain whether that website actually provides pornographic photographs of underage teenage girls. The website name itself does not indicate that some, much less most or all, of the photographs on it were pornographic, nor is there any other evidence so indicating. By way of contrast, in Gourde, the search warrant affidavit contained “unequivocal” evidence that a particular website (of which the defendant was a paid subscriber) “was a child pornography site whose primary content was in the form of images.” 440 F.3d at 1070. Not only did the owner admit as much, see id., but a government agent also extensively explored the website, see id. at 1067. Here, in contrast, the only thing we know is that the photograph had a uniform resource locator (URL) “label” of “www.nude-teens.com.”
The majority tries to fill that gap with the assertion that because the affidavit recited Reynolds’ experience and training, the magistrate “was entitled to give some deference to [Reynolds’] statement that the photograph constituted an ‘image of suspected contraband,’ even though the affidavit’s description of the photograph did not necessarily support the conclusion that the photograph constituted child pornography.” Maj. op. at 1178. No, he wasn’t. The Fourth Amendment’s warrant requirement rests on the understanding that the protection of liberty requires review by *1185 independent magistrates before a search is authorized, not just taking the government’s word when it claims the need and justification to subject individuals to non-consensual searches of their property. See, e.g., Leon, 468 U.S. at 915, 104 S.Ct. 3405; Coolidge v. New Hampshire, 403 U.S. 443, 449-53, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). That principle is the basis for the rule that we cannot look beyond “the four corners of the underlying affidavit,” Crowe, 608 F.3d at 434 (citation omitted), even if the affiant had knowledge supporting probable cause that he never disclosed to the issuing magistrate, see Whiteley v. Warden, 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). “A contrary rule” — adopted by the majority here— “render[s] the warrant requirements of the Fourth Amendment meaningless.” Id.
Of course, there are circumstances in which the affiant’s opinion, if informed by relevant experience and training and grounded in the facts of the case, can be helpful in ascertaining the existence of probable cause. See generally United States v. Weber, 923 F.2d 1338, 1344-45 (9th Cir.1990). But even then, a magistrate never “defers” to an affiant. Rather, “Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.” Leon, 468 U.S. at 915, 104 S.Ct. 3430 (quoting Gates, 462 U.S. at 239, 103 S.Ct. 2317). Moreover, this is a situation in which Reynolds’ experience and training mattered not at all, as neither gave him any more expertise than the average layperson as to the principal issue determining probable cause here: whether the photograph at issue “exhibited the genitals or pubic area” of the individual depicted. Battershell, 457 F.3d at 1051.
Further, even if this were a situation in which Reynolds’ experience and training potentially could be relevant, his affidavit makes no effort to connect his experience and training to the facts of this case. In this respect, the affidavit is less adequate than the one found deficient in Weber, which at least averred that the affiant’s substantial experience led him to believe that the suspect was a collector of child pornography. 923 F.2d at 1345. Here, by contrast, the only statements Reynolds makes about his experience with child pornography cases is that he has “observed numerous examples of child pornography” and “conducted and participated in investigations related to computer crimes and child pornography.” Even more so than in Weber, these “boilerplate recitations designed to meet all law enforcement needs.... may have added fat to the affidavit, but certainly no muscle.” Weber, 923 F.2d at 1345-46.
In sum, the only conclusion consistent with Battershell and the Fourth Amendment is that the affidavit did not provide probable cause for the search warrant.
IV.
The Leon alternative holding the majority tacks on at the end of its opinion won’t wash either. As already described, there is simply no question that the warrant here was issued on precisely the sort of impermissibly “bare bones” affidavit of which Gates warned, see Gates, 462 Ü.S. at 239, 103 S.Ct. 2317, and no reasonable officer would have thought that it provided probable cause. See Leon, 468 U.S. at 899, 104 S.Ct. 3405 (“[A]n officer [does not] manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.”); Weber, 923 F.2d at 1346 (same).
I note that the government has not argued that this was a situation requiring *1186 quick decisionmaking or a hastily-drafted affidavit. For good reason. Although Reynolds’ illness obviously complicated matters, that fact, even coupled with the revocation of consent, did not create the risk that Krupa would destroy incriminating evidence, as the computers were in the government’s possession. As the majority relates, the computers were seized on April 12. From that point on, the computers were in the possession of the government, the children were safely in the custody of their mother, and Krupa was told that he was not permitted to stay in Sgt. Velasco’s residence. Thus, if there was any exigency, it had long since dissipated by the time Reynolds obtained the search warrant some two weeks after the computers were seized. As a consequence, “there was no need for the ‘hurried judgment’ upon which law enforcement decisions must often be based,” Weber, 923 F.2d at 1346 (citation omitted), and, as in Weber, “[although we do not question the subjective good faith of the government, it acted entirely unreasonably in preparing the affidavit it presented.” Id.
CONCLUSION
For the foregoing reasons, I would hold that the affidavit did not provide probable cause to search Krupa’s computers, reverse the district court’s application of Leon’s good-faith exception, and remand for consideration of whether, after excising the suppressed evidence from the affidavit supporting the second search warrant, probable cause remained for issuance of the second search warrant.
I cannot help but think that had this case involved anything but child pornography, it would come out differently. I fear that understandable abhorrence of this particular crime can infect judicial judgment. We would do well to remember that the protections of the Fourth Amendment do not depend on the nature of the suspected criminal activity, any more than they do on the race or gender of the suspect. And that is particularly so where the issue is the searching of personal computers, on which more and more extremely sensitive information is stored. See Comprehensive Drug Testing, 621 F.3d at 1176-77. “Given the current environment of increasing government surveillance and the long memories of computers, we must not let the nature of the alleged crime, child pornography, skew our analysis or make us ‘lax’ in our duty to guard the privacy protected by the Fourth Amendment.” Gourde, 440 F.3d at 1074.
I respectfully dissent.
APPENDIX: Affidavit In Support of Search Authority
Statement of Qualifications:
I, Dennis Reynolds, your affiant, duly sworn peace officer employed by the Stanislaus County Sheriffs Department ], and have been since July 1998. I am currently assigned to the Sacramento Valley Hi-Tech Crimes Task Force. And have been so assigned since July 2000. In Oct 2001 I was recalled to active duty. I am a Master Sergeant in the United Stated Air Force and I am currently assigned as an Investigator for the 95th Security Forces Squadron, investigations section. I have been an Air Force Security Policeman in the Air Force Reserve [sjince January 1996[.] Further I have been involved [i]n [mjilitary and [civilian [l]aw [enforcement for 24 Years.
I attended the U.S. Army Military Police School in 1979 upon completion of my training I worked various assignments of patrol, physical security, and minor crimes investigation during various assignments^]
In October 1981, upon leaving active duty I [j]oined the California Army National Guard. I was assigned as a Military Police Investigatorf.] I completed training *1187 and course work for this assignment in March 1982. My course work included criminal investigations, rules of evidence, and search and seizure. I held the assignment till [sic] December 1990. In December 1990 I was assigned as a CID Special Agent (reserve) with The U.S. Army Criminal Investigations Command. I was assigned to a General Crimes Team. During this assignment I investigated many crimes including financial, sex crimes, arsons, auto theft, and homicides. I held this duty assignment until I transferred to the Air Force Reserve in 1996.
In February 1983 I became a full time sworn peace officer for the Orange County Sheriffs Department where I attended the Orange County Sheriffs Academy. I received 670 [h]ours of instruction in the detection and investigation of criminal activity. I was assigned to adult detention/[p]atrol where I worked until 1986.
From January 1990 to July 1992 I attended Consumnes River College where I completed 39 semester units in the study of criminal investigations, police community relations, Rules of Evidence, and Search and Seizure. In April 1993 I became a Reserve Police Officer for the Patterson Police Department, patrol division until July 1998 where I gained first-hand experience in detection and investigation of criminal activity. I have investigated a multitude of crimes including threats, violent assaults, robberies, thefts, check fraud, narcotic offenses, and traffic accidents. In July 1998 I became a Deputy Sheriff-Coroner with the Stanislaus County Sheriffs Department. In October 1998 I was assigned as a Detective/computer crimes investigator/computer forensics examiner with the Stanislaus County Sheriffs Department. I was assigned to the Sacramento Valley Hi-Tech Crime Task Force in July 2000.
I am responsible for conducting investigations of computers and recovery of digital evidence from various types of digital media. During the course of my employment I have observed numerous examples of child pornography in all forms of media including computer media. I have conducted and participated in investigations related to computer crimes and child pornography.
I have attended numerous California Peace Officer Standards and Training courses including Legal Aspects of Investigations, Narcotic Investigations, Traffic Accident Investigations, Special Weapons and Tactics, Firearms Instructor, and Advanced Officer Training. I have also attended seventeen computer investigation courses where I have received over 628 hours of instruction in the area of computer Crimes, Internet Investigations and Child Exploitation; I also hold two California Peace Officer Standards and Training certifications as a computer crimes specialist/investigator. I have also conducted over 200 computer forensic examinations [i]n the past two years.
I am a member of several professional associations including; the High Technology Crime Investigators Association, High Technology Crime Network, California Narcotic Officers Association, The National Tactical Officers Association, and the Peace Officers Research Association of California.
Summary:
This case concerns possible child pornography and contraband!.]
Facts in Support:
On Friday April 12, 2002[,] I, Inv Dennis Reynolds!,] was advised by TSgt Kennedy that he had responded to[redacted address] for a report of child neglect. As a result of this patrol response!,] TSgt Ken *1188 nedy [a]dvised me that there were several computers at the location and the there [sic] were no custodial parents at the house only an individual KRUPA who was not affiliated with the military. This person had care and custody of the residence. I asked TSgt Kennedy to establish if there was anything that involved possession or any other types of contraband at the location in addition to asking for consent to review the data contained with this the computers [sic] of any floppies o[r] CDROM media at the location. Consent was given and 13 computer towers and 2 laptop systems, [sic]
1. During the course of investigating this case and working under the original consent I located an image of suspected contraband. This photograph appeared to be of a nude 15 to 17 year old female with a web site label of www.nude-teens.com[.] [B]ased on this photograph being located and the fact that consent has been revoked by both Mr. KRUPA and SSgt Velasco I am requesting authority to continue this search for any further items of contraband. But as these systems were used by both parties, and based on the common use of this system I am requesting search authority.
Conclusion:
Based on the above facts, and your affiant[’]s knowledge, training and experience, and the experience of other law enforcement personnel^] I request that search authority be issued with respect to the requested location and for the seizure of said property.
There is probable cause to believe that the suspect has violated laws of the United States. Specifically, Title 18 U.S.C. 2252 and 2252A which make it a crime to knowingly possess, transport, ship[,] receive, distribute, or reproduce material involving the sexual exploitation of minors (2252) or material constituting or containing child pornography. (2252A) [T]hese materials are contraband[,] as well as violations of California Penal Code Section 311.1 Possession of Child Pornography.
Digital media is instrumentality of the crime and/or contraband or a container for evidence relating to the crime and will be removed for off-scene search. The amount of time currently required for this examination is 120 days plus 10 days for review.
/s/ Dennis Reynolds, Msgt, USAF
Investigator, 95th Security Forces Squadron
/s/ David A. LaFave, Col, USAF
Search Magistrate, Edwards AFB, CA
Date: [blank] Time: [blank]

. The text of the affidavit in support of the search warrant is attached, in its entirety, as an appendix to this opinion.

. "In reviewing a search warrant on probable cause grounds, this Court, like the district court, is limited to the information and circumstances contained within the four corners of the underlying affidavit.” Crowe v. County of San Diego, 608 F.3d 406, 434 (9th Cir.2010) (citation and quotation marks omitted). Consequently, many of the facts the majority recites at the outset of the opinion — that the house was in disarray, that Sgt. Velasco was in the Philippines, and what Krupa said to an FBI agent — are not pertinent to our inquiry, as they did not appear in the affidavit supporting the application for the search warrant.

.Although the majority repeatedly emphasizes the oddity of Krupa, a civilian, staying at Andrews Air Force Base, the back story is quite mundane and not at all suspicious. Krupa was a decorated member of the United States Air Force for six years, receiving his honorable discharge months prior to the incidents in question.

. Moreover, Morgan concerns only an implied consent to a search of the person on initial entry onto a military base. Morgan does not suggest, nor does any other case of which I am aware, that implied consent carries over as long as the civilian is on the base (or here, even after he has left the base) and is transferred to his far-out-of-reach possessions as well as his person.

. The majority also never explains why it matters that "some of [the computers]” — in reality, three of them — “were linked together,” Maj. op. at 1176, no doubt because it doesn't. In the first place, that fact does not appear in the search warrant application affidavit, so it is irrelevant. See note 2, supra. Moreover, all the majority posits about the linkage is that it was "unusual.” Maj. op. at 1178. An "unusual” fact only supports probable cause if it is probative of criminal activity. See Gates, 462 U.S. at 238, 103 S.Ct. 2317; Hill, 459 F.3d at 970 ("The Constitution is clear; a magistrate may authorize a search of a location only if officers establish probable cause to believe evidence of a crime may be found there.”). In any event, local area networks (LAN) are not unusual; they are an exceedingly common fact of modern life, used by technophiles and Luddites alike. The record indicates that Krupa used the LAN at issue here to play computer games with his Air Force friends.

. Cal.Penal Code § 311.3, also recited by the affidavit, is identical in all material respects.